IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARC BOYD,

        Plaintiff,

   v.

OREGON STATE POLICE LIEUTENANT
ROBERT EDWARDS; OREGON STATE
POLICE CAPTAIN ANDY HEIDER;
OREGON STATE POLICE LIEUTENANT
DAVID GIFFORD; AND OREGON STATE
POLICE CAPTAIN JEFF LANZ;

        Defendants.

Case No. 6:15-cv-238-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Marc Boyd ("Boyd") brings this action against four Oregon State Police ("OSP") officers alleging six claims for relief. Defendants move to dismiss claims one and claims three through six under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 11. In the alternative, the defendants move to dismiss claims three and five under Fed. R. Civ. P. 12(f). For the reasons that follow, the defendants' motion, ECF No. 11, is GRANTED in part. Claims one, three, four, and five are dismissed, with prejudice. The motion to dismiss claim six is DENIED.

1 – OPINION AND ORDER

# BACKGROUND[1]

On March 21, 2013, Boyd observed a fellow OSP officer, defendant Edwards, conduct what Boyd believed to be an unconstitutional search of a citizen's motor home. Boyd promptly reported the conduct to his immediate supervisor, who informed defendant Heider. On April 4, 2013, Heider served an official written directive on Boyd that instructed him to cease discussing Edwards's allegedly unconstitutional activities or Boyd would be subject to discipline. Boyd reported the written directive to his union attorney. On April 12, 2013, defendant Lanz, then the Captain supervising the OSP Office of Professional Responsibility, sent an email to Boyd. In this email, Lanz rescinded Heider's written directive and informed Boyd a separate written order was forthcoming. On April 19, 2013, Heider served Boyd with a second order that again directed Boyd to cease all communications about Edwards's allegedly illegal activities.

On that same day, defendant Lanz informed the president of the Oregon State Police Officers Association that Lanz intended to investigate Boyd for every minor infraction or perceived infraction because of Boyd's conduct in reporting Edwards. The defendants subsequently initiated several internal investigations targeting Boyd with no less than fourteen false allegations.

On October 19, 2013, the Eugene Police Department ("EPD") arrested Boyd in a manner that violated numerous EPD policies. Following the arrest, on October 21, 2013, the defendants placed Boyd on paid administrative leave pending the outcome of an internal investigation. On March 23, 2014, Edwards and Heider delivered a letter to Boyd announcing OSP's intention to terminate Boyd based upon their internal investigation. Boyd alleges this investigation was initiated in order to harass and retaliate against him for his report regarding Edwards. The letter

---

[1] The court takes all relevant facts in this opinion from the allegations in the First Amended Complaint.

2 – OPINION AND ORDER

informed Boyd he was on paid administrative leave pending the outcome of the internal investigation and discipline process.

Boyd alleges the defendants fabricated evidence to support the initiation of the internal investigations and ignored exculpatory evidence that would have exonerated Boyd of any policy violations. After Boyd served the Oregon Department of Administrative Services with a tort claim notice on June 6, 2014, Lanz admitted to fabricating evidence in order to retaliate against Boyd for his report of Edwards's conduct. Ultimately, OSP decided not to terminate Boyd, and Boyd is currently scheduled to return to his original position.

After Boyd brought this action on February 12, 2015, his scheduled supervisor, defendant Gifford, told Boyd's coworkers that Boyd should not have been allowed to return to work and could not be trusted. In a subsequent meeting, Gifford and Edwards suggested to Boyd's coworkers that they limit contact with Boyd to avoid being involved in a lawsuit.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id*. at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If

3 – OPINION AND ORDER

the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Under Fed. R. Civ. P. 12(f) the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."

## DISCUSSION

Boyd alleges he faced retaliation at work after he reported the misconduct of a coworker to his supervising officer. Because Boyd is scheduled to return to his original position, Boyd's substantive due process claim fails as a matter of law. I also conclude that Boyd's communications to his supervisor were in Boyd's capacity as a public official, so claims three and four fail to establish a First Amendment violation. Claims five and six deal with alleged retaliation suffered as a result of filing this action. Because the filing of the complaint in this action constitutes speech in Boyd's capacity as a private citizen, the defendants' motion to dismiss claim 6 is denied. However, claims five and six are identical, so the unopposed motion to strike claim five is granted. Defendants do not move to dismiss claim two, Boyd's procedural due process claim.

### I. Substantive Due Process

Boyd is still employed as an OSP officer, so he cannot meet the extremely high bar to make out a substantive due process violation. The Ninth Circuit explained the requirements for a substantive due process violation in the government employment context as follows:

> [C]onstitutional review of government employer decisions is more constrained than the review of legislative or regulatory ones. . . . We decline to hold that there is no substantive due process claim for a public employer's violations of occupational liberty. Rather, we limit the claim to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to

4 – OPINION AND ORDER

> prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." Such a governmental act would threaten the same right as a legislative action that effectively banned a person from a profession, and thus calls for the same level of constitutional protection. The concerns about federal courts reviewing every public employee discharge . . . are not implicated because such a claim is colorable only in extreme cases.

*Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997-98 (9th Cir. 2007) (internal citations and quotations omitted).

The case Boyd cites is inapplicable here. *See Costanich v. Dep't of Social and Health Serv.*, 627 F.3d 1101 (9th Cir. 2010). The *Costanich* court noted that depriving a person of employment by deliberately fabricating evidence could, in some circumstances, make out a claim for a violation of substantive due process. However, the court also noted, "before turning to the question of whether Costanich's due process rights were violated, we must first determine whether there has been a deprivation of life, liberty, or property." *Id.* at 1110. In *Costanich*, the state revoked the plaintiff's foster case license, *id.* at 1103, which tracks the language of *Engquist* that a substantive due process claim can result "if the government had yanked the license of an individual in an occupation that requires licensure." *Engquist*, 478 F.3d at 997-98.

In this case, Boyd did not lose any license and he is scheduled to return to his original position. Because there has been no deprivation of life, liberty, or property, claim one fails as a matter of law and is dismissed, with prejudice.

## II. Free Speech

A government employee alleging that his employer violated his right to free speech must satisfy five elements:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the

5 – OPINION AND ORDER

> adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) (citation omitted). At issue before this Court is whether Boyd spoke as a private citizen or a public employee.

### A. Defendants Lanz, Edwards, and Heider (Claims 3 and 4)

As in all free speech claims, it is useful to begin by looking at what Boyd actually said and who he actually spoke to. Claims three and four allege "Plaintiff's reporting of Defendant Edwards unconstitutional search of a criminal defendant's motor home is a protected act under the 1st and 14th Amendment." Am. Compl., ¶ 51. Boyd alleges his "reporting of Defendant Edwards' unconstitutional search of a criminal defendant's motor home was a motivating factor" for defendant Edwards', Heider's, and Lanz's retaliatory acts. Am. Compl., ¶ 52.

Earlier in the complaint, Boyd alleges that on March 21, 2013, he witnessed defendant Edwards conduct an illegal search on a motor home. Am. Compl., ¶ 12. Boyd immediately reported Edwards to Sergeant Gilbert, Boyd's immediate supervisor. Am. Compl., ¶ 13. Boyd's speech regarding alleged illegal actions of a police officer clearly involves a matter of public concern.

Sergeant Gilbert immediately informed defendant Heider of Boyd's report. Am. Compl., ¶ 13. On April 4, 2013, "Defendant Heider served Plaintiff with an official written directive. The written directive instructed Plaintiff to cease discussing Defendant Edwards' unconstitutional activities or Plaintiff would be the subject of discipline." Am. Compl., ¶ 14. Thus far, the complaint's allegations deal only with Boyd reporting Edwards's unconstitutional search to Sergeant Gilbert, Boyd's direct supervisor. This speech, however, is not protected speech.

Both parties cite *Dahlia*, and *Dahlia* compels a finding that Boyd acted in his capacity as a public employee in reporting Edwards's conduct to his supervising officer. In *Dahlia*, a Burbank police officer witnessed abuse during a robbery investigation and reported it to his supervisor. . *Id.* at 1063-64. After his supervisor ignored him, the officer met three times with the Internal Affairs unit and with the Los Angeles Sheriff's Department ("LASD"). *Id.* at 1065. The officer also reported threats he received to the police association president, who in turn reported to the city manager. *Id.* Four days after meeting with the LASD, the officer was placed on administrative leave pending discipline. *Id.*

Although the Ninth Circuit ultimately concluded that the officer's conduct was protected First Amendment speech because he reported outside the chain of command, it first noted:

> Even construing the facts and drawing all inferences in Dahlia's favor, the only reasonable conclusion is that Dahlia acted pursuant to his job duties when he—as a detective investigating the Porto's robbery and prior to receiving any threats or orders to the contrary—reported up the chain of command to the supervising lieutenant overseeing the investigation about abuse related to that same investigation.

*Id.* at 1076. As noted, Boyd immediately reported Edwards's allegedly illegal conduct to his immediate supervisor. In reporting Edwards up the chain of command, Boyd spoke in his role as a public employee. Therefore, Boyd's reporting of Edwards's illegal acts cannot form the basis of a First Amendment claim.

Boyd points out that he reported the April 4, 2013, written directive to his union attorney, but that report does not grant Boyd First Amendment protection. In *Dahlia*, the officer's supervisor threatened to frame the officer by "put[ting] a case on him." Dahlia reported the threats to his union president. The Ninth Circuit noted "it is reasonable to infer that Dahlia did

7 – OPINION AND ORDER

not have a duty to report threats to his union" and concluded Dahlia's report to his union president constituted protected speech. *Id.* at 1077.

There are several differences between Dahlia's report to the union president and Boyd's report to his union attorney. First, the union representative in *Dahlia* reported the officer's complaint to the city manager. Boyd's complaint is silent as to what his union attorney did with Boyd's report of the written directive. Second, Boyd appears to have reported to his union attorney not a matter of public concern, but a personal workplace grievance of no importance to the general public.

As noted, Boyd alleges his First Amendment claims against defendants Edwards, Heider, and Lanz stem from his "reporting of Defendant Edwards' unconstitutional search of a criminal defendant's motor home . . . ." Am. Compl., ¶ 52. But that is not what Boyd reported to his union attorney. Instead, Boyd "reported the written directive to his Union Attorney on April 12, 2013." Am. Compl., ¶ 15. The written directive warned Boyd he faced future discipline if he continued to report Edwards' unconstitutional activities in the future. Am. Compl., ¶ 14. There is no allegation Boyd ever reported Edwards' illegal activities to anyone outside his chain of command.

*Dahlia* instructs district courts to perform a "practical, fact-specific inquiry" to determine whether the government employee acted as a private citizen. *Id.* at 1071. No facts exist in Boyd's complaint to establish that he engaged in protected speech outside of his reports to his supervisor. The second written directive from Heider – after Boyd reported the first written directive to his union attorney – directed Boyd to cease all communications about Edwards, and the complaint does not identify any additional instances where Boyd spoke about Edwards's conduct to anyone. Although Boyd claims he acted in contravention of his supervisors' orders,

8 – OPINION AND ORDER

after Boyd received the written directive he appears to have followed his supervisors' orders by not discussing Edwards's conduct further. As the court stated in *Dahlia*, "supervisors threatened him not to *say* anything when interviewed. Because Dahlia appears to have done precisely what his superiors wanted him to do . . . we cannot say that Dahlia acted in contravention of their orders." *Id.* at 1077 (emphasis in original).

Put simply, Boyd's case is not analogous to *Dahlia*. In *Dahlia*, the plaintiff reported the misconduct to his supervising officer three times, met with Internal Affairs three times, reported a direct threat to the police officers' association president, who reported it to the city manager, then Dahlia reported out to the LASD. In contrast, Boyd reported the misconduct to his supervising officer once and forwarded a written directive to his union attorney, who presumably contacted Boyd's superiors on Boyd's behalf. Boyd's complaint identifies no additional instances of First Amendment speech that could form the basis for retaliation by Lanz, Edwards, or Heider.

As in *Dahlia*, Boyd's initial report up the chain of command to his supervising officer was undisputedly part of his official duties. Likewise, Boyd's report of the written directive to his union attorney does elevate claims three and four to the level of a First Amendment violation. Therefore, claims three and four are dismissed, with prejudice.

### B. Defendant Gifford (Claims 5 and 6)

Boyd argues that defendant Gifford retaliated against him for either Boyd's June 6, 2014, tort claims notice or his February 12, 2015, federal lawsuit against Lanz, Edwards, and Heider. As an initial matter, Boyd's tort claims notice is not a matter of public concern, so it does not qualify as protected First Amendment speech. "Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined 'by the content, form, and

9 – OPINION AND ORDER

context of a given statement, as revealed by the whole record.'" *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012) (quoting *Connick v. Meyers*, 461 U.S. 138, 147-48 (1983)). The tort claims notice is merely a statutory procedural requirement Boyd had to follow in order to sue the government and is of no interest to the general public.

Boyd's filing of this lawsuit, however, is a matter of public concern. *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 926 (9th Cir. 2004) ("when government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees . . . their speech is inherently a matter of public concern. . . . Litigation seeking to expose such wrongful governmental activity is, by its very nature, a matter of public concern.") (internal citations omitted). Boyd's lawsuit is also clearly outside the chain of command and constitutes private speech. Assuming the facts in the complaint are true, Gifford's actions to ostracize Boyd from his coworkers could be an adverse employment decision in retaliation for Boyd exercising his First Amendment right to bring this action.

Although claim six states a claim for relief, claim five is redundant and is stricken under Fed. R. Civ. P. 12(f). As Boyd clarified at oral argument, similar to claims three and four, claims five and six both allege First Amendment violations and have no substantive difference. Therefore, defendants' now unopposed motion to strike claim five is granted.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

10 – OPINION AND ORDER

## CONCLUSION

For the above reasons, the defendants' motion to dismiss, ECF No. 11, is GRANTED in part, and claims one, three, four, and five are dismissed, with prejudice. The motion to dismiss claim six is DENIED.

IT IS SO ORDERED.

DATED this 27th day of May, 2015.

_____/s/ Michael J. McShane\_____
Michael McShane
United States District Judge